541 So.2d 447 (1989)
Freddie George PEARSON
v.
Dana R. PARSONS.
No. 58731.
Supreme Court of Mississippi.
March 8, 1989.
*448 Gerald A. Dickerson, Lucedale, Albert Necaise, Gulfport, for appellant.
Dan Wise, Hattiesburg, Robert S. Newton, Newton & Hoff, Wiggins, for appellee.
Before DAN M. LEE, P.J., and PRATHER and PITTMAN, JJ.
PRATHER, Justice, for the Court:
This case challenges the validity of the Democratic primary election for the office of Supervisor of District One of Stone County, Mississippi. Although the unofficial tally on election night gave the incumbent a four vote margin, Dana Parsons, son of the chairman of the Stone County Democratic Executive Committee, was declared the winner of the election by a margin of six votes by the Stone County Democratic Executive Committee on the official counting.
Freddie Pearson, the incumbent supervisor, requested judicial review of the election contest. The appointed Special Tribunal ruled that Freddie Pearson was the Democratic nominee for the office of Supervisor, District One.
Dana Parsons appealed, assigning as error the following:
(1) Whether the trial court erred when it allowed the amendment of the petition for judicial review filed in this cause.
(2) Whether the trial court erred when it assumed jurisdiction of this matter and allowed it to proceed, although it had not been filed "forthwith" pursuant to statute.
(3) Whether the trial court erred when it failed to proceed to the discharge of its designated duty at the earliest possible date, resulting in this matter being tried on seven days from October 28, 1987, through December 2, 1987, in violation of statutory dictate.
(4) Whether the trial court erred when it disqualified the appellant's and appellee's attorneys from the trial of this matter.
(5) Whether the trial court allegedly failed to conduct a trial de novo as required by statute.
(6) Whether the trial court erred when, after ruling that no further evidence would be heard concerning the proceedings before the Stone County Democratic Executive Committee, it reversed its ruling and advised counsel for both sides that it, on its own motion, intended to subpoena all members of the Executive Committee.
(7) Whether the trial court erred in disqualifying ten (10) alleged qualified votes in District One, Stone County, Mississippi, and in counting three (3) votes of individuals who allegedly were not qualified voters.
(8) Whether the trial court erred in finding that the actions taken by the Board of Supervisors of Stone County, Mississippi, in conducting a partial purging and adjustment of poll books, were permissible actions.
(9) Whether the trial court erred in permitting alleged personal bias and prejudice against the father of the appellant to permeate these proceedings, depriving the appellant of the fair trial de novo to which he was entitled.
(10) Whether the trial court erred in violating Rule 15 of the Rules of Discipline for the Mississippi State Bar when the court publicly condemned a member of the Bar not involved either as an attorney or litigant in the present action and in the attorney's absence.

STATEMENT OF THE FACTS
This election contest arises in the aftermath of a hurried redistricting of Stone County, Mississippi, ordered by the United States District Court in mid June, which ordered the August primaries to be held as redistricted. On election night, August 25, 1987, the incumbent candidate Freddie Pearson tallied four votes more than Dana Parsons. Two nights later on August 27, 1987, the Stone County Democratic Executive Committee, chaired by Jack Parsons, the father of candidate Dana Parsons, certified Dana Parsons as the nominee with 445 votes to 439 for Freddie Pearson due to *449 the allowance of contested challenged ballots, which yielded a 10 vote change.
Freddie Pearson contested the election and filed a written motion that Chairman Jack Parsons recuse himself. On September 22, 1987, Freddie Pearson appeared with counsel and witnesses before the Stone County Democratic Executive Committee which granted him a limited 15 minute time period within which to present his case. The recusal motion was refused to be considered by the chairman for the reason that Freddie Pearson was not a member of the committee.
Following Pearson's presentation of his challenge to the election results, and nominee Parsons' response, Chairman Jack Parsons called for a vote from the Executive Committee. He framed the issue to be voted on as whether there was "fraud" or "no fraud." At the conclusion of the vote, Chairman Jack Parsons announced there was a tie vote, meaning "no fraud", and the election would stand. However, conflicting testimony was given before the tribunal supporting the contention that 8 committee members voted that there was "fraud", while 7 voted there was "no fraud."
On October 5, 1987, Freddie Pearson filed with the Circuit Court of Stone County a petition for judicial review of the election contest, with two certificates from attorneys that they had made an independent investigation into the election contest and found the protest and petition should be sustained.
The Chief Justice of this Court appointed a Special Tribunal consisting of Chancellor Robert H. Oswald and the Election Commissioners of Stone County.
The Tribunal entered its final judgment on December 4, 1987, ruling that Freddie Pearson was the legal Democratic nominee for the office of Supervisor, District One.[1] He further stated that the Court was referring the chairman's conduct to the Mississippi State Bar. From this judgment Dana Parsons appealed.

I.

DID THE TRIAL COURT ERR WHEN IT ALLOWED AMENDMENT OF THE PETITION FOR JUDICIAL REVIEW?
The issue of this assignment of error challenges the jurisdiction of the special tribunal to act. The statutory authority under which a petition for judicial review of an election contest is initiated is Miss. Code Ann. § 23-15-927 (Supp. 1988) which provides in part:
But such petition for a judicial review shall not be filed unless it bear [sic] the certificate of two (2) practicing attorneys that they and each of them have fully made an independent investigation into the matters of fact and of law upon which the protest and petition are based and that after such investigation they verily believe that the said protest and petition should be sustained and that the relief therein prayed should be granted... .
After having given a certificate to contestant Pearson for use with Pearson's petition, one of the certifying attorneys, Charles Burhorn, petitioned the court to withdraw his certificate because he had made no independent investigation. Rather than allowing Mr. Burhorn to withdraw his certificate, the trial court permitted Freddie Pearson to amend his petition for judicial review by attaching another certificate. Dana Parsons contends that the tribunal lost jurisdiction upon the petition of Burhorn to withdraw his certificate, and further, Parsons contends that amendments are not permitted under the judicial review statute and that pursuant to Miss.R. Civ.P. 81(a)(4), election contests are not procedurally governed by the rules of Civil Procedure. The rules permit amendment, but the above statute does not. He contends, therefore, the court erroneously allowed an amendment to the petition. Dana Parsons' contention is incorrect. M.R.C.P. 81(a) clearly states that the procedural *450 rules have limited applicability to election contests and would defer to the statute where the rules conflict with the statutory scheme.
Rule 81(a)(4), Miss.R.Civ.P., makes clear that practice and procedure in election contests are governed by statute in the first instance and that the Mississippi Rules of Civil Procedure control only to the extent that our legislature has remained silent.
Shannon v. Henson, 499 So.2d 758, 762 (Miss. 1986). As there is nothing in the statutes conflicting with the rules respecting amendments, in the present procedural context the Mississippi Rules of Civil Procedure apply.
Rule 15(a), Miss.R.Civ.P., provides in part that "[a] party may amend his pleading as a matter of course at any time before a responsive pleading is served... ." Rule 15(c), Miss.R.Civ.P., provides in part that:
Whenever the claim ... asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.
The trial court, therefore, did not err when it allowed the petition for judicial review to be amended. The jurisdictional challenge of this appeal fails.

II.

DID THE TRIAL COURT ERR IN DETERMINING THAT THE PETITION FOR REVIEW WAS FILED "FORTHWITH"?
Miss. Code Ann. § 23-15-927 (Supp. 1988) provides in pertinent part:
When and after any contest has been filed with the county executive committee, or complaint with the State Executive Committee, and the said executive committee having jurisdiction shall fail to promptly meet or having met shall fail or unreasonably delay to fully act upon the contest or complaint, or shall fail to give with reasonable promptness the full relief required by the facts and the law, the contestant shall have the right forthwith to file in the circuit court of the county wherein the irregularities are charged to have occurred, ... (Emphasis added).
The decision of the Stone County Democratic Executive Committee was rendered September 22, 1987. The petition for Judicial Review of Election Contest was filed in the Circuit Court on October 5, 1987, nine working days later (a total of thirteen days including two weekends). The Amended Petition was filed October 9, 1987.
This Court has held on several occasions that the term "forthwith" connotes no specific fixed time limit. Rather, its meaning depends upon consideration of the surrounding facts and circumstances and varies with each particular case. Smith v. Deere, 195 Miss. 502, 507, 16 So.2d 33, 35 (1943); Turner v. Henry, 187 Miss. 689, 695-96, 193 So. 631, 632 (1940); Harris [v. Stewart,] 187 Miss. [489] at 502-04, 193 So. [339] at 342 [(1940)].

Shannon v. Henson, 499 So.2d 758, 764.
This Court has interpreted "forthwith" to be as few as four days, Shannon v. Henson, 499 So.2d 758 (Miss. 1986) and as many as forty-one Smith v. Deere, 195 Miss. 502, 16 So.2d 33, 35 (1943). In the case at bar, the facts indicate that the "forthwith" requirement was satisfied. This assignment of error, therefore, is without merit.

III.

DID THE TRIAL COURT FAIL TO FOLLOW THE STATUTORY MANDATE TO PROCEED AT EARLIEST POSSIBLE DATE?
The controlling statute directs that the judge appointed by the Chief Justice of this Court hear the contest at the earliest possible date under Section 23-15-929, Miss. Code Ann. (Supp. 1988) which in pertinent part provides:
Upon the filing of the petition certified as aforesaid, ... . it shall be the official duty of the said circuit judge or chancellor to proceed to the discharge of the designated duty at the earliest possible *451 date to be fixed by the judge or chancellor and of which the contestant and contestee shall have reasonable notice, to be served in such reasonable manner as the judge or chancellor may direct, in response to which notice the contestee shall promptly file his answer, and also his cross-complaint if any he have to prefer.
The decision of the Stone County Democratic Executive Committee was rendered September 22, 1987. The petition for judicial review of election contest was filed in the circuit court on October 5, 1987. The Supreme Court appointed a judge on October 12, 1987, and trial began October 28, 1987. The Special Tribunal delivered its bench opinion after the November 3rd general election on December 2, 1987. Dana Parsons contends that he was prejudiced as a result.
This statute should not be used as a penalty when accidental interventions or difficulties have upset what otherwise would have been reasonable calculations as to the available time. Trial began on Wednesday, October 28, 1987.[2] There were only three intervening work days before the election on Tuesday, November 3, 1987. After the election was held, time should no longer have been considered "of the essence."
In addition, it seems unlikely that Dana Parsons would be prejudiced by a decision rendered adverse to him after the election date, as he would still have to undergo the appeals process. This assignment of error, therefore, is without merit.

IV.

DID THE TRIAL COURT ERR IN REQUIRING RECUSAL OF BOTH PARTIES' ATTORNEYS?
Citing Meeks v. Tallahatchie County, et al., 513 So.2d 563 (Miss. 1987), the trial court disqualified all of the attorneys for both Dana Parsons and Freddie Pearson at the pretrial conference on October 23, 1987. The court gave the parties until Sunday afternoon, October 25, 1987, to secure other counsel and notify the court. All attorneys objected to this removal. The trial began on October 28, 1987.
The trial court removed Dana Parsons' attorneys because their senior law partner, Jack Parsons, was the father of Dana Parsons and Chairman of the Stone County Democratic Executive Committee throughout all proceedings involved in the contested election. Freddie Pearson's attorney, James Hall, was removed due to his past membership on the Democratic Executive Committee. Replacement counsel neither moved for a continuance nor objected to the commencement of trial.
Additionally, the trial judge learned that both attorneys were to be witnesses in the tribunal hearing. At trial the parties may request that all witnesses be excluded from the courtroom.
This assignment is controlled by Rule 3.7, Rules of Professional Responsibility, as adopted by this Court February 18, 1987, and effective July 1, 1987, which rule provides:
Rule 3.7 LAWYER AS WITNESS
(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:
(1) the testimony relates to an uncontested issue;
(2) the testimony relates to the nature and value of legal services rendered in the case; or
(3) disqualification of the lawyer would work substantial hardship on the client.
(b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.
The rationale of the rule rests on the premise that there exists a conflict of interest when an advocate is asked to be a witness. The rule disqualifies a lawyer *452 where there is a likelihood that the lawyer will be a necessary witness. This rule then is not an immunity from testifying by the advocate witness, but it is a limitation on advocacy. Ronald D. Rotunda, Professional Responsibility, 2nd Ed., West Publishing Co., p. 73.
The justification for this rule has been discussed by various courts. Some courts hold that the dual role of advocate and witness may be detrimental to the client's interest in that the lawyer/witness is more impeachable because of his personal interest in his client's case. Groper v. Taff, 717 F.2d 1415 (C.A.D.C. 1983). A factfinder may suspect the attorney is distorting the truth to further his client's interest. MacArthur v. Bank of New York, 524 F. Supp. 1205 (S.D.N.Y. 1981). The opposing attorney may be inhibited in cross-examination of an attorney-witness. Ford v. State, 4 Ark. App. 135, 628 S.W.2d 340, (1982). In comments to Mississippi's Rule 3.7, it is noted that the combination of roles of advocate and witness may confuse the factfinder. A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof. The court would not be candid if it did not recognize the opposing argument to this rule, and that viewpoint is that the rule interferes with the lawyer-client relationship. Brown and Brown, Disqualification of the Testifying Advocate,  A Firm Rule? 57 N.C.L.Rev. 597 (1979).
However, the most important and compelling rationale for this Court's adoption of this rule is that the rule protects the distinction between advocacy and testimony and protects the integrity of the adversary system.
In prior cases, this Court has addressed the issue of when an attorney must decline representation in a lawsuit or withdraw from representation. A lengthy discussion of the 1982 Canon 5 of the Mississippi Code of Professional Responsibility is contained in Pittman v. Currie, 414 So.2d 423 (Miss. 1982), and this Court stated:
In Scott County Co-Op v. Brown, 187 So.2d 321 (Miss. 1966), we noted the undesirability of attorneys testifying in cases wherein they are counsel, and said that the practice should be avoided whenever possible. We have said it is reversible error to allow a district attorney who is prosecuting a defendant to testify in the defendant's case. Jenkins v. State, 242 Miss. 646, 136 So.2d 580 (1962); Adams v. State, 202 Miss. 68, 30 So.2d 593 (1947). However, in Gradsky v. State, 243 Miss. 379, 137 So.2d 820 (1962), we held that it was error not to allow the defendant to call his attorney as a witness in his favor. We based this decision on the constitutional guarantee of compulsory process.
[1] The general rule concerning testimony by attorneys, as stated by the Minnesota Supreme Court, is that a lawyer should not testify unless circumstances arise which are not anticipated and unless his testimony is necessary to prevent a miscarriage of justice. In the rare case where the attorney's testimony is needed to protect the client's interest, not only may the attorney testify  justice requires that he do so. Schwartz v. Wenger, 267 Minn. 40, 124 N.W.2d 489 (1963). See also Adams v. Flora, 445 S.W.2d 420 (Ky.Ct. of App. 1969); Connolly v. Straw, 53 Wis. 645, 11 N.W. 17 (1881); Cherniak, The Lawyer as a Witness for his Client, 17 Ala.L.Rev. 308 (1964-5).
At p. 426-7; See also Gray v. State, 469 So.2d 1252 (Miss. 1985) (prosecuting attorney is disqualified from acting in criminal case if he previously represented or has been consulted professionally by accused with respect to offense charged). These authorities compel this Court to conclude that in this case withdrawal from representation of both counsel who were to be witnesses on contested issues was required.
The next query to be addressed is whether the trial court had the authority to require such withdrawal on its own motion. The decisions of this Court have impliedly answered this question on numerous occasions *453 when the trial court was directed to maintain order and decorum in the courtroom, or to institute contempt proceedings for actions committed in its presence, or to fine or assess costs against a lawyer. Authority of a trial court to regulate members of the legal profession for acts taking place in their presence has always been acknowledged, subject to appellate review by this Court. This has never been held to usurp the exclusive jurisdiction of this Court to regulate the practice of law. In Pittman v. Currie, supra, the issue was raised by objection to an attorney/witness' testimony. In Gray v. State, supra, the issue was raised on motion for a new trial. In Kurbitz v. Kurbitz, 77 Wash.2d 943, 468 P.2d 673 (1970), the denial of a motion to exclude the attorney as counsel before trial began gave rise to a writ of certiorari in the Washington courts. This issue has always been raised in the context of on-going litigation. To conclude that a trial court cannot on its own motion prevent a reversal error from occurring would be inconsistent.
Other jurisdictions have addressed this question. In Hahn v. Boeing, 95 Wash.2d 28, 621 P.2d 1263 (1980), the Washington Court held:
Upon proper grounds, it [Superior or trial court] can disqualify. Alpha Inv. Co. v. Tacoma, 13 Wash. App. 532, 536 P.2d 674 (1975). See Kurbitz v. Kurbitz, 77 Wash.2d 943, 468 P.2d 673 (1970); 7 Am.Jur.2d Attorneys at Law §§ 184-89 (1980); 7A C.J.S. Attorneys & Client § 162 (1980)... .
As stated in Breland v. Mallett, 527 So.2d 629 (Miss. 1988):
The purpose of the Meeks v. Tallahatchie decision, ... was to aim in the direction of guaranteeing to the present generation of Americans who live in Mississippi that the election process in this state will be a hallmark of integrity, and that it will be beyond question. And that when elections are conducted in this state, that the citizens can feel confident that they have been conducted in a proper manner. And to remove any question of impropriety, or the appearance of impropriety.
Breland at 631.
In the instant case, the tribunal judge was told that both attorneys were to be witnesses on the contested issues of the election. This Court holds that the judge acted well within his discretion in requiring the withdrawal of both counsel to maintain the integrity of the judicial system. On these facts and grounded in the Rules of Professional Responsibility, his actions were justified and proper, and this Court finds no basis for holding that the tribunal judge abused his discretion.

V.

DID THE TRIAL COURT CONDUCT A TRIAL DE NOVO?
The statutory law of this state sets forth that after the filing of an election contest, a Special Tribunal shall be constituted. Miss. Code Ann. § 23-15-931 (Supp. 1988) provides in part that:
The Special Tribunal so constituted shall fully hear the contest or complaint de novo, ... .
Dana Parsons contends he did not receive a trial de novo as the Special Tribunal examined only the proceedings before the Stone County Democratic Executive Committee. However, administrative law and procedures apply to a trial de novo of an election committee. It is a trial de novo when new and additional evidence is received by the Tribunal in addition to the proceedings below and when the executive committee's findings are not considered as conclusive.
As stated in Pascagoula Mun. Sep. Sch. Dist. v. Doe, 508 So.2d 1081 (Miss. 1987) regarding an administrative hearing, this Court held:
The trial court must make an independent ruling based upon a preponderance of the evidence, but the act contemplates that the source of evidence generally will be the administrative hearing record, with some supplementation at trial, if requested, and necessary.
*454 Doe at 1086. See also, Meeks v. Tallahatchie Co., supra.
The Special Tribunal, therefore, did properly conduct a trial de novo receiving new and additional evidence and examining the proceedings before the executive committee.

VI.

DID THE TRIAL COURT ERR IN REVERSING A PRIOR RULING AND SUBPOENAING ALL MEMBERS OF THE STONE COUNTY DEMOCRATIC EXECUTIVE COMMITTEE?
The trial judge ruled that no further evidence would be heard concerning the proceedings before the Stone County Democratic Executive Committee. Later the trial judge reversed itself and advised counsel that the court, on its own motion, intended to subpoena all members of the Executive Committee. The appellee called several of the Executive Committee members. The appellant's counsel inquired as to when the court intended to call all other members, and the trial judge stated he had decided against doing this.
The appellant was not precluded from calling any witnesses he desired. This court finds no merit to this assignment.

VII.

DID THE TRIAL COURT ERR IN DISQUALIFYING TEN (10) VOTES AND IN ALLOWING THREE (3) OTHER VOTES TO DETERMINE THE CORRECT COUNT?

THE CONTESTED BALLOTS
Miss. Code Ann. § 23-15-933 (Supp. 1988) states in pertinent part:
If the findings of fact have been concurred in by all the commissioners in attendance, provided as many as three (3) of the commissioners are and have been in attendance, the facts shall not be subject to review on appeal, and the bill of exceptions shall not set up the evidence upon which the facts have been determined. But if not so many as three (3) of the commissioners are and have been in attendance or if one or more of the commissioners dissent, a transcript of the testimony may be filed with the bill of exceptions, or within such short time thereafter as the Supreme Court may allow, and the Supreme Court, upon a review thereof, may make such finding upon the facts as the evidence requires, giving only such consideration as the court may think warranted to the presumption of correctness of the conclusions of the trial judge.
Factual inquiry is imposed upon the Special Tribunal by statute, and it is the duty of this Court to give consideration to the Special Tribunal's findings which this Court determines are warranted. Wade v. Williams, 517 So.2d 573, 576 (Miss. 1987); Riley v. Clayton, 441 So.2d 1322, 1325 (Miss. 1983); Berryhill v. Smith, 380 So.2d 1278, 1280 (Miss. 1980).
This Court has carefully and consciously examined the challenged ballots with the supporting evidence as the factual issues and with the Tribunal's finding of fact and conclusions of law. The decisions are supported by the evidence and legal authority and warrant this Court's affirmance. The Tribunal was unanimous in its conclusion.

VIII.

DID THE TRIAL COURT ERR IN CONCLUDING THAT THE BOARD OF SUPERVISORS ACTED PROPERLY?
Dana Parsons contends the Board of Supervisors' involvement in the redistricting process of Stone County was equivalent to acting as Election Commissioners, and therefore, the holding of Meeks v. Tallahatchie County, et al., 513 So.2d 563 (Miss. 1987) and Miss. Code Ann. § 23-15-217 (Supp. 1988) would prevent them from seeking any office other than Election Commissioner. He further contends the involvement of Board of Supervisors did not avoid the appearance of impropriety.
A fair reading of the testimony reveals the Board of Supervisors and the National Association for the Advancement of Colored People, (NAACP), assisted the Election *455 Commissioners with information in order to comply with the federal court redistricting order in time to hold the August 1987 Primaries. There is no evidence that the Board of Supervisors made the decisions on the redistricting; their participation was limited to supplying information. The evidence demonstrates that it was the Election Commission which made the decisions as to the redistricting pursuant to the statutory requirement of Miss. Code Ann. § 23-15-127 (Supp. 1986). Meeks, supra, is distinguishable from these facts. Therefore, the trial court did not err when it found that the Board of Supervisors' involvement in the redistricting process was permissible.

IX.

DID THE TRIAL JUDGE ERR IN PERMITTING ALLEGED PERSONAL BIAS AND PREJUDICE TO PERMEATE THESE PROCEEDINGS?

THE TRIAL JUDGE
Dana Parsons contends he was the victim of bias and prejudice directed against his father, Stone County Democratic Executive Committee Chairman Jack Parsons. In support of his contention, Dana Parsons directs this Court's attention to the bench opinion delivered by Chancellor Oswald in which he stated:
There's absolutely no way in an election dispute involving his own son that Jack Parsons could preside or participate. On his own initiative, Jack Parsons should have recused himself totally the instant he learned there was a contest involving his son.
Chancellor Oswald, in his bench opinion, clearly stated the issue at bar.
The issue is not the candidate per se, but whether the facts, evidence, not emotions, are [sic] bias, disclose irregularities which affect the election.
The standards of conduct imposed on the Chairman of the Executive Committee are even greater. He must preside impartially and with fairness to both sides, objectively and honestly and at all times following the law... . If he has a personal interest in the contest, not only must he abstain from voting, but also, he must recuse himself as chairman, abstain from any participation in the proceedings and let a disinterested member of the Executive Committee preside. Like Caesar's wife, the chairman and his conduct must be beyond doubt and above suspicion.
Dana Parsons contends that the criticism of the chairman is an attack on him personally.
The case at bar involves more than just a member of the Executive Committee; it involves the chairman's affirmative obligations. When a political party Executive Committee meets to hear charges of irregularity concerning primary election contests, it sits as a quasi judicial body whose specific responsibility is to insure the public of honest elections. The Chairman of the Committee is analogous to a judge. In regards to recusal, this Court follows an objective test adopted from Hall v. Small Business Admin., 695 F.2d 175 (5th. Cir.1983), where "a judge is required to disqualify himself if a reasonable person, knowing all the circumstances, would harbor doubts about his impartiality." Rutland v. Pridgen, 493 So.2d 952 (Miss. 1986) (emphasis added).
Chairman Jack Parsons acknowledged the impropriety of his position when he told Ron Dile to be prepared to chair the meeting if any committee member opposed him serving as chairman. Yet he refused to recuse himself when formally requested to do so by the attorney for Freddie Pearson, a person with standing to raise the issue for his client. Therefore, the Democratic Executive Committee failed to fulfill its obligation of providing a fair and impartial hearing to the candidates and to the public. Dana Parsons' allegations of bias and prejudice are without merit. "The election process must be kept untainted and unsoiled. It must be like Caesar's wife; `beyond suspicion.'" Breland v. Mallett, 527 So.2d 629, 631 (Miss. 1988). That which is at stake is public confidence in our system of government. The Tribunal officer did all that he could to eliminate personal bias and *456 prejudice in disqualifying the original attorneys and in his rulings throughout the trial. There is no reversible error here.

X.

DID THE TRIAL COURT VIOLATE THE CONFIDENTIALITY OF RULE 15 OF THE RULES OF DISCIPLINE FOR THE MISSISSIPPI STATE BAR?
Dana Parsons also contends that Chancellor Oswald violated Rule 15 of the Rules of Discipline by stating from the bench that he was referring Chairman Jack Parsons to the Mississippi State Bar for investigation of improper and unethical conduct. The assignment charges violation of the confidentiality afforded under Rule 15 which states:
All ... members of the Bar, ... witnesses ... are strictly enjoined to keep and maintain confidential, all things arising under these rules .. .,
Rule 4 states the duty of courts to initiate the filing of complaints evincing unethical conduct. The assignment here addresses the public announcement by the judge. However, Jack Parsons is not a party to these proceedings, and this Court does not address this issue.

CONCLUSION
The assignments of error are without merit. This Court therefore affirms the Special Tribunal's finding that Freddie George Pearson is the true and legal nominee for the Office of Supervisor, District One, Stone County.
Freddie Pearson has on file and awaiting consideration his Motion to Delay Briefing Scheduling, to Strike All Affidavits and Other Exhibits From the Revised Brief of the Appellant, and to Require Appellant to Comply With Rule 25(b). Filed simultaneously with this brief is Appellee's Motion For Time Within Which to Respond to Improper Evidence and Within Which to File Revised Appellee's Brief Thereon, in case the earlier motion be denied.
THE COURT GRANTS THE MOTION TO STRIKE ALL AFFIDAVITS AND OTHER EXHIBITS SUBMITTED IN APPELLANT'S BRIEF AS BEING OUTSIDE THE RECORD BEFORE THE TRIBUNAL AND AFFIRMS THE SPECIAL TRIBUNAL.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN, ANDERSON and PITTMAN, JJ., concur.
PITTMAN, J., HAWKINS and DAN M. LEE, P.JJ., and SULLIVAN, J., specially concur.
BLASS, J., not participating.
PITTMAN, Justice, specially concurring:
I concur in the findings of the majority and in the result of the majority opinion.
Unfortunately, the trial judge in his bench opinion criticized the conduct of the Chairman of the Democratic Executive Committee by setting out a standard of conduct and then finding that the Chairman of the Democratic Executive Committee had come up short of the standard. Further, the trial judge implied criminal wrongdoing but announced that he would report the Chairman of the Democratic Executive Committee, a lawyer and the father of the appellant Dana R. Parsons, to the Mississippi Bar Association. By this comment, the learned trial judge seemed to be imposing a higher standard on Mr. Parsons, father of the appellee, than he was applying upon himself in exercising judicial demeanor. A trial judge must be, to quote from the bench opinion, "Like Caesar's wife ... his conduct must be beyond doubt above suspicion."
HAWKINS and DAN M. LEE, P.JJ., and SULLIVAN, J., join this opinion.
NOTES
[1] There was not a Republican candidate; therefore, the selection of the Democratic nominee was tantamount to election to the office.
[2] The case was tried on the following dates: October 28th and 29th, November 5th, 23rd and 24th, and December 1st and 2nd.