## IN THE SUPREME COURT OF MISSISSIPPI

### NO. 1998-CA-01204-SCT

*IN THE MATTER OF THE ESTATE OF ARTHUR GREEN, DECEASED: MELVIN LOUISE BANKS*

*v.*

*RONALD JOHNSON*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/31/1998 |
| TRIAL JUDGE: | HON. DEREK E. PARKER |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | J. PEYTON RANDOLPH, II |
| ATTORNEYS FOR APPELLEE: | LEE B. AGNEW, JR. |
| | KATE S. EIDT |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS AND ESTATES |
| DISPOSITION: | AFFIRMED - 1/27/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 2/17/2000 |

## BEFORE PITTMAN, P.J., BANKS AND COBB, JJ.

## BANKS, JUSTICE, FOR THE COURT:

¶1. This appeal asks the question whether a 96-year-old person taking mind-altering medication for dementia and neurosyphilis made a valid inter vivos transfer of real property. The trial court answered in the negative. We find no manifest error and affirm.

### I.

¶2. Melvin Louise Banks ("Banks") is the natural niece of the deceased, Arthur Green ("Green"). Ronald Johnson ("Johnson") is the executor of Green's estate. Green made an inter vivos conveyance of two parcels of real property to Banks on August 3, 1994, via two warranty deeds. Banks transported Green to the office of attorney Roosevelt Daniels II where Green signed the deeds. At the time of the conveyance Green was suffering from senile dementia and neurosyphilis. Green was also taking Haldol and Ativan, mind-altering drugs. Green was illiterate. He signed both deeds with an "X."

¶3. Upon Green's death on July 10, 1995, Johnson brought this action on August 20, 1996, in the Madison County Chancery Court to recover the two parcels of land. The lower court held that a confidential relationship existed between Banks and Green. Further, the court held Banks failed to rebut the presumption of undue influence. The court also held that Green was not mentally competent to execute the deeds. The court held that the deeds were void and should be set aside. Banks filed a Motion to

Reconsider and to Take Additional Testimony. The court, again, ruled in Johnson's favor and refused to take the additional testimony. This appeal resulted.

## II.

¶4. The chancellor's decision will not be reversed unless the decision is manifestly wrong. ***In re Estate of McClerkin v. Martell***, 651 So. 2d 1052, 1055 (Miss. 1993)(citing ***In re Estate of Mason v. Fort***, 616 So. 2d 322, 331 (Miss. 1993)). "The Court will not hesitate to reverse if it finds the chancellor's decision is 'manifestly wrong, or that the court applied an erroneous legal standard . . . '." ***Martell***, 651 So. 2d at 1055 (citing ***Armstrong v. Armstrong***, 618 So. 2d 1278, 1280 (Miss. 1993)).

¶5. "[C]lear and convincing evidence is required to establish lack of mental capacity, and the crucial time in such incapacity is when the document is executed." ***Conservatorship of Stevens v. Patrick***, 523 So.2d 319, 322 (Miss. 1988).

¶6. Several witnesses testified that Green was "not in his right mind." However, assuming this is true, if it can be shown that Green was lucid when he executed the deed then he was competent to execute the deeds. ***Williams v. Wilson***, 335 So.2d 110,113 (Miss.1976).

¶7. There is a legal distinction between "weakness of intellect" and a total lack of capacity to execute a deed. ***Patrick***, 523 So.2d at 322. Absent a confidential relationship or another factor such as grossly inadequate consideration, "weakness of intellect" does not rise to the standard of a total lack of capacity to execute a deed, and is insufficient to set aside a deed. ***Id***. at 322-23.

¶8. The testimony showed that Green was prone to "good and bad days." Green's treating physician, Dr. T. C. Tennin, testified that Green's mental state was "patchy" and "he had his good and bad days." Dr. Tennin testified that "there were days when his remote memory was good, days that he didn't have any problems with motor activity, even cognition on some days were [sic] good."

¶9. Dr. Obie McNair testified that Green was a 96-year-old man suffering from senile dementia and neurosyphillis and under the influence of mind-altering drugs, Haldol and Activan, at the time he executed the deeds.

¶10. Green was totally dependant upon Mrs. Bennie Ruth Smith for his everyday care and business. She has helped take care of Green since the death of his wife.

¶11. The chancery court in its opinion stated that it took into consideration Green's age, his neither being able to read nor write, his mental state, the doctors' testimony, and the lay testimony and concluded Green was not competent to execute the will. The chancery court was neither manifestly wrong nor did it apply an erroneous legal standard. There is ample evidence in the record to support the court's finding that Green was not mentally competent to execute the deeds. ***Hickey v. Anderson***, 210 Miss. 455, 49 So.2d 713 (1951) (A deed executed by a grantor who was an invalid, wholly dependent upon others to manage her affairs, old, infirm, and suffering from poor memory was void and set aside).

## III.

¶12. Banks argues she was severely prejudiced by her trial attorney's conflict of interest and inability, due to his acting as attorney in the matter, to testify at the hearing of this matter. As such, the chancery court should

have disqualified Daniels, absent voluntary recusal, or in the alternative, should have allowed him to testify. Because the chancery court did not, she argues, we should reverse and remand.

¶13. Banks's attorney at trial, Roosevelt Daniels, II, was the attorney who drafted the deeds in question. Banks asserts that Daniels, therefore, possessed knowledge of the events surrounding the execution of the subject deeds which was crucial to her defense of it. The chancery court, knowing this, nonetheless allowed Daniels to proceed as her attorney.

¶14. The chancery court also refused after the hearing of this matter to allow Daniels to give testimony on Banks's behalf. Banks argues that equity demands that Daniels's testimony be taken in this matter, as his testimony is the best indicia of what actually occurred at the execution of the deed, and whether Green was exercising his own independent will, or was hampered by undue influence of Banks. We disagree.

¶15. This matter was not raised until Banks's motion for new trial, after the case had been tried and a decision rendered. While it may have been clear that Daniels was a witness to Green's demeanor at the time of execution of the will, it is not the duty of the chancellor to present witnesses. Daniels did not offer to testify or list himself as a witness. Further, no motion to disqualify was filed. The court had no occasion then to disqualify him as counsel.

¶16. [Rule 3.7 of the Mississippi Rules of Professional Conduct](#) controls. ***Pearson v. Parsons***, 541 So.2d 447, 451 (Miss. 1989). An attorney shall not act as an advocate at a trial in which the attorney is likely to be a necessary witness unless: (1) the testimony relates to an uncontested issue, (2) the testimony is regarding legal services provided in the action, or (3) disqualification of the attorney would work substantial hardship to the client. Miss. R. Prof. Conduct 3.7(a). The chancery court only had a duty to disqualify Daniels if he would have testified or was likely to testify and if to do so would not work substantial a hardship on Banks. *Id*. at 452. Because Banks never offered Daniels as a witness, the court had no occasion to act.

## IV.

¶17. The chancery court did not err in denying Banks's Motion for Reconsideration and to take additional testimony. The testimony which was to be offered, that of her trial attorney, Daniels, was not newly discovered and was in fact available to Banks at the time of the trial. Banks simply failed to present the evidence.

## V.

¶18. For the foregoing reasons, the judgment of the Madison County Chancery Court is affirmed.

¶19. **AFFIRMED**.

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., SMITH, MILLS, WALLER AND COBB, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY.**