# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-EC-02262-SCT

*JEFFERSON DAVIS COUNTY DEMOCRATIC
EXECUTIVE COMMITTEE AND IRENE CARTER,
NADINE THOMPSON, ROGER DAMPIER, OLLIE
JOHNSON AND BILLIE JEAN PAGE,
INDIVIDUALLY AND IN THEIR OFFICIAL
CAPACITIES AS MEMBERS OF THE JEFFERSON
DAVIS COUNTY DEMOCRATIC EXECUTIVE
COMMITTEE*

*v.*

*JOHN WILLIAM DAVIES*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/03/2003 |
| TRIAL JUDGE: | HON. FORREST A. JOHNSON, JR. |
| COURT FROM WHICH APPEALED: | JEFFERSON DAVIS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | CHARLES E. MILLER |
| ATTORNEY FOR APPELLEE: | WILLIAM HEATH HILLMAN |
| NATURE OF THE CASE: | CIVIL - ELECTION CONTEST |
| DISPOSITION: | AFFIRMED - 03/17/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### EN BANC.

### COBB, PRESIDING JUSTICE, FOR THE COURT:

¶1. John William Davies received a majority of the votes in the second Democratic Party primary election for Jefferson Davis County Chancery Clerk. Following the election, the Jefferson Davis County Democratic Executive Committee decided to hold a new primary election for that position, based upon the discovery of improperly executed absentee ballots,

improperly delivered absentee ballots, and differences between the number of signatures and ballots cast. Davies challenged the Executive Committee's decision, and pursuant to Miss. Code Ann. § 23-15-929, Sixth Circuit Court Judge Forrest A. Johnson was appointed to hear the challenge.[1] Although he held that violations of the election code did occur, he found that they were technical violations and irregularities which were done without fraudulent intent to help any particular candidate and were not substantial enough to warrant a new election. The Executive Committee appeals, alleging that the trial court: (1) did not have jurisdiction to hear the case because Davies failed to comply with Miss. Code Ann. § 23-15-927, and (2) it was error to hold that the violations did not warrant a new election. Finding no reversible error, we affirm the trial court's judgment.

## FACTS

¶2. On August 26, 2003, a second Democratic primary election occurred in Jefferson Davis County. There were two candidates for the Chancery Clerk nomination, Davies and Yvon Norwood. The initial count of the ballots revealed that Davies received 2,784 votes and Norwood received 2,750. On August 27, 2003, the Jefferson Davis County Democratic Executive Committee timely met pursuant to Miss. Code Ann. § 23-15-597 to canvass the

---

[1] The Mississippi Election Code requires that appeals from the decision or actions of a county executive committee regarding a primary election contest be heard by a special tribunal, which consists of a circuit court judge or chancellor appointed by the Mississippi Supreme Court from a district other than the one in which the contest arises and the five election commissioners of the county in which the contest arose. Miss. Code Ann. §§ 23-15-929, 23-15-931. The circuit court judge or chancellor is the controlling judge of both the facts and the law. The election commissioners sit as advisors or assistants in the trial and determination of the facts, and as assistants in counts, calculations and inspections, and in seeing to it that ballots, papers, documents, and books are secured. *Id.* § 23-15-931.

returns and announce the winner of the various races.[2]  The Committee, at the request of Norwood and over the objection of Davies, conducted a "courtesy re-count" for Norwood that confirmed the initial count of the Chancery Clerk's race.  The Committee announced the results of all other races, but refused to announce the name of the nominee in the Chancery Clerk's race due to "irregularities" in the voting process.  The Committee met again two days later to further discuss the Chancery Clerk's race and again refused to declare the result and announce the name of the nominee in that race.

¶3.    Norwood then requested to have all the ballot boxes examined pursuant to Miss. Code Ann. § 23-15-911.[3]  On September 3, the Committee approved Norwood's request and began examining the ballot boxes again.  The Committee finished that full examination on September 8, 2003.  As a result of the examination, Davies received 2785 votes (a gain of one) and Norwood 2756 (a gain of six).[4]  In addition, the Committee identified numerous election code

---

[2] Miss. Code Ann. § 23-15-597 states in pertinent part:

> (1) The county executive committee shall meet on the first or second day after each primary election, shall receive and canvass the returns which must be made within the time fixed by law for returns of general elections and declare the result, and announce the name of the nominees for county and county district offices . . . .

[3] Miss. Code Ann. § 23-15-911 states in pertinent part:

> (1) At any time within twelve (12) days after the canvass and examination of the box and its contents by the election commission or executive committee, as the case may be, any candidate or his representative authorized in writing by him shall have the right of full examination of said box and its contents upon three (3) days' notice of his application therefor served upon the opposing candidate or candidates . . . .

[4] The additional votes for each candidate came from affidavit ballots not counted in the earlier canvassing.

3

violations, including thirty-seven absentee ballots that had not been signed across the flap,[5] thirteen absentee ballots that were delivered in a bulk package to the local nursing home for the residents named on a list provided to the circuit clerk's office by the social worker at the nursing home,[6] one absentee application with the date not matching the envelope,[7] three absentee applications not signed,[8] and one absentee ballot with no application.[9]  There were also five precincts where the number of signatures in the sign-in book did not correspond with the number of ballots cast.[10]  According to the testimony of Irene Carter, Chairwoman of the Jefferson Davis County Democratic Executive Committee, the absentee ballots were not rejected as required by statute before counting began.[11]  Instead, the illegal absentee ballots were taken out of their envelopes, placed with the election day ballots, and counted.  The Committee made a separate list for each category of violation, but it only noted the precinct name and the number of improper ballots.  Only these lists were admitted into evidence, and

---

[5] Violation of Miss. Code Ann. § 23-15-633.

[6] Violation of Miss. Code Ann. § 23-15-719.

[7] Violation of Miss. Code Ann. §§ 23-15-627 & -719.

[8] Violation of Miss. Code Ann. § 23-15-627.

[9] Violation of Miss. Code Ann. § 23-15-715.

[10] See Miss. Code Ann. §§ 23-15-541, 23-15-591.

[11] Miss. Code Ann. § 23-15-641(3) states:

> If an affidavit is required and the officials find that the affidavit is insufficient, or if the officials find that the absentee voter is otherwise disqualified to vote, the envelope shall not be opened and a commissioner or executive committee member shall write across the face of the envelope "REJECTED" giving the reason therefor, and the registrar shall promptly notify the voter of such rejection.

there was no way to determine whether some absentee ballots might have been listed multiple times due to multiple infractions on one ballot. Thus, Carter acknowledged that it was impossible during the examination to separate and reject the illegal absentee ballots. There was, however, undisputed testimony regarding the precinct by precinct vote count. Even if every one of the ballots shown on the Committee's lists were subtracted from Davies's count, precinct by precinct, there would be no change in the outcome of any box.

¶4. On September 15, 2003, the Committee informed the State of Mississippi Democratic Executive Committee that due to the discovered violations, a new county-wide election for the Chancery Clerk nominee would be held. Davies then filed a Petition for Writ of Mandamus, for Injunctive Relief and Other Relief As Provided By Statute and for Expedited Hearing in the

Jefferson Davis County Circuit Court, pursuant to Miss. Code Ann. §§ 23-15-593[12] and 23-15-927.[13]

---

[12] Section 23-15-593 states:

When the ballot box is opened and examined by the county executive committee in the case of a primary election, or county election commissioners in the case of other elections, and it is found that there have been failures in material particulars to comply with the requirements of Section 23-15-591 and Section 23-15-895 to such an extent that it is impossible to arrive at the will of the voters at such precinct, **the entire box may be thrown out unless it be made to appear with reasonable certainty that the irregularities were not deliberately permitted or engaged in by the managers at that box, or by one (1) of them responsible for the wrong or wrongs, for the purpose of electing or defeating a certain candidate or candidates by manipulating the election or the returns thereof at that box in such manner as to have it thrown out;** in which latter case the county executive committee, or the county election commission, as appropriate, shall conduct such hearing and make such determination in respect to said box as may appear lawfully just, subject to a judicial review of said matter as elsewhere provided by this chapter. Or the executive committee, or the election commission, or the court upon review, may order another election to be held at that box appointing new managers to hold the same.

(emphasis added).

[13] Section 23-15-927 states:

When and after any contest has been filed with the county executive committee, or complaint with the State Executive Committee, and the said executive committee having jurisdiction shall fail to promptly meet or having met shall fail or unreasonably delay to fully act upon the contest or complaint, or shall fail to give with reasonable promptness the full relief required by the facts and the law, the contestant shall have the right forthwith to file in the circuit court of the county wherein the irregularities are charged to have occurred, or if more than one county to be involved then in one (1) of said counties, a sworn copy of his said protest or complaint, together with a sworn petition, setting forth with particularity wherein the executive committee has wrongfully failed to act or to fully and promptly investigate or has wrongfully denied the relief prayed by said contest, with a prayer for a judicial review thereof. But such petition for a judicial review shall not be filed unless it bear the certificate of two (2) practicing attorneys that they and each of them have fully made an independent investigation into the matters of fact and of law upon which the protest and petition are based and that after such investigation they verily believe that the said protest and petition should be sustained and that the relief therein prayed should be granted, and the petitioner shall give a cost bond in the sum of Three Hundred Dollars

6

¶5. The hearing before Judge Johnson and the Jefferson Davis County Election Commissioners occurred on October 3, 2003. Initially, the Committee moved to dismiss Davies's appeal for lack of jurisdiction due to Davies's failure to comply with certain requirements of Miss. Code Ann. § 23-15-927. The Committee argued that (1) his petition was not notarized, (2) he had not paid the required $300 bond, and (3) the two attorneys who provided the statutorily required certificates attesting to the validity of Davies's appeal did not conduct an adequate investigation. Judge Johnson permitted Davies to amend his petition by verifying it under oath during testimony and took the Committee's motion to dismiss under advisement. At the end of the proceeding, Judge Johnson denied the motion. Those who testified during the proceeding were Davies, four members of the Committee, Assistant Attorney General Phil Carter, and Jefferson Davis County Circuit Clerk Cecil Anderson. At the close of testimony, Judge Johnson reversed the decision of the Committee and stated:

> From this evidence, the Court finds that no illegal votes were cast for either candidate. Therefore, it was not enough to change the results. The Court finds that no votes were disqualified from the evidence. Therefore, [it] is not impossible to determine the will of the voters. The Court does not condone any irregularities or violations which are not right no matter how long they have been going on. They were technical. They were not with fraudulent intent to help any particular candidate . . . . The Court finds that in the disqualification of illegal votes in this case does not change the results of this election. The Court finds that the irregularities in question were not substantial enough to warrant a new election based upon the facts and circumstances in this particular case considering the alleged irregularities or violations discovered.

---

($300.00), with two (2) or more sufficient sureties conditioned to pay all costs in case his petition be dismissed, and an additional bond may be required, by the judge or chancellor, if necessary, at any subsequent stage of the proceedings. The filing of such petition for judicial review in the manner set forth above shall automatically supersede and suspend the operation and effect of the order, ruling or judgment of the executive committee appealed from.

7

After making his findings, Judge Johnson polled the Jefferson Davis County Election Commissioners, who pursuant to § 23-15-931 had been serving as advisors to the judge during the proceeding. Commissioners Betty Jo Davis, O'Neal Hathorn and Ralph McNease concurred with the judge's findings of fact and ruling, and Commissioner Shirley Williams dissented.[14] The Committee subsequently appealed to this Court challenging the trial court's jurisdiction and its holding that the violations did not warrant a new election.

## ANALYSIS

¶6.     Davies correctly asserted in his petition, contrary to the allegations of the Committee, that the circuit court had jurisdiction pursuant to § 23-15-927. The Committee asserts that jurisdiction was lacking due to failure to comply with the statutory requirements:    namely (1) the petition was not sworn, (2) Davies did not file an appeal bond, and (3) the two attorneys who certified that they had made an independent investigation had not done so. The trial court properly allowed the amendment of Davies's unsworn petition by sworn testimony as to its content at the hearing.[15] The circuit clerk testified that he had received in his office, a cash

---

[14] Although the judge announced a 4-1 vote, the transcript records only these four votes. Miss. Code Ann. § 23-15-933 says that when at least three commissioners attend the trial and all concur with the judge's findings of fact, the facts are not subject to appellate review. If less than three commissioners attend or if one or more dissent from the judge's findings of fact, then upon review this Court may make such findings as the evidence requires.

[15] M.R.C.P. 81(a) states that in election contests, statutory procedures specifically provided for in the Election Code control over the M.R.C.P. to the extent they conflict with each other. Section 23-15-927 is silent regarding the amendment of pleadings. Therefore, M.R.C.P. 15(a) controls and amendments are allowed "at any time before a responsive pleading is served." *See Pearson v. Parsons*, 541 So.2d 447, 450 (Miss. 1989). In the present case, no responsive pleading from the Committee is on record. Even if there was a response by the Committee served upon Davies and in the record, M.R.C.P. 15(a) allows the amendment of pleadings after a responsive pleading is served "by leave of the court." In the present case, the trial court granted leave to amend at the hearing.

8

bond from Davies in the sum of $300. Although the Committee argued that the two certifying attorneys had made no independent investigation, and members of the committee testified that they had not been contacted by the attorneys, neither of the attorneys was subpoenaed nor asked to testify. There was testimony by Davies that independent investigation had been made, although no specific details were given. "[A] collateral inquiry as to how [an attorney] made his investigation or how fully he made it can no more be permitted than it could be questioned of a judge that he failed to attend to the evidence. . . ." *Harris v. Stewart*, 187 Miss. 489, 193 So. 339, 343 (1940).

¶7. Davies also correctly asserted in his petition that the violations did not warrant a new election because the requirements of § 23-15-593 were not satisfied. Section 23-15-593 allows the county executive committee in primary elections to throw out individual precinct ballot boxes and order another election at that box if the statutory requirement is met. To throw out an individual precinct box, there must be "failures in material particulars to comply with the requirements of § 23-15-591 [requirements and security regarding the results of election] and § 23-15-895 [regulation of campaign material within 150 feet of polls] to such an extent that it is impossible to arrive at the will of the voters at such precinct." And only if such failures were "deliberately permitted or engaged in by the managers at that box, or by one (1) of them responsible for the wrong or wrongs, for the purpose of electing or defeating a certain candidate or candidates by manipulating the election" is the box subject to being thrown out.

¶8. The Committee argued that there were enough violations of the election code to warrant the holding of a new election, because it was "impossible to arrive at the will of the voters."

Judge Johnson patiently heard all the testimony for both sides, and in announcing his decision, he stated that "[t]he Democratic Executive Committee acted at all times in an honest and good faith manner, to the best of their ability, with the limited advice they were getting, to do the right thing according to the law, and in fairness to both candidates and to the voters of Jefferson Davis County." He went on, however, to say that "[a]ny irregularities or violations, which are not right, no matter how long they have been going on in Jefferson Davis County, were technical. They were not done with any fraudulent intent to help any candidate." He further found that "[t]he irregularities in question were not substantial enough to warrant a new election, based upon the facts and circumstances in this particular election, considering the alleged irregularities or violations, the scope of them, and also the quantity of them. It is possible to ascertain the will of the voters in the election in question." He concluded with the statement that "[i]t is further the judgment of this court that a new election is not necessary, authorized or called for, under the evidence and circumstances before the court" and certified Davies the winner.

¶9. There are only two reported cases citing § 23-15-593 and thus little precedent regarding the application of the statute. In *Rizzo v. Bizzell*, 530 So.2d 121 (Miss. 1988), a supervisor candidate's sister-in-law handed out campaign literature too close to the polling place in violation of § 23-15-895. Despite this violation, both the trial judge and this Court held that the violation was technical, not material, and that the will of the voters in the effected precinct could be ascertained. In the other case, *Barbour v. Gunn*, 890 So.2d 843 (Miss. 2004), certain residents of precincts were not allowed to vote due to errors in polling books and district boundary determinations by the Hinds County Executive Committee. Both the trial

10

court and this Court held that there could be no determination of the will of the voters at the affected precincts because a certain and significant amount of voters were not allowed to vote. Thus, new elections for the affected precincts were proper.

¶10. Based upon the facts of this case, we hold that Judge Johnson was correct in overruling the Committee's decision to conduct a new election for the Democratic nominee for Jefferson Davis County Chancery Clerk. The requirements to hold a new election under § 23-15-593 were not met. Section 23-15-593 authorizes new elections for individual precincts if the requirements are met, not a new election county or district wide. To hold a new election county wide in this case, the Committee must determine that all precincts failed in "material particulars to comply with the requirements of § 23-15-591 and § 23-15-895 to such an extent that it is impossible to arrive at the will of the voters . . . ." There is no evidence in this case that there were violations of § 23-15-591 and § 23-15-895. Therefore, the Committee exceeded its authority under § 23-15-593 in ordering a new election for the Democratic nominee for Jefferson Davis County Chancery Clerk.

## CONCLUSION

¶11. The trial court's findings of fact and conclusions of law are fully supported by the record in this case and should not be overturned absent an abuse of discretion. We find no abuse and affirm the judgment of the trial court.

¶12. **AFFIRMED.**

**SMITH, C.J., WALLER, P.J., EASLEY, CARLSON, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR. DIAZ, J., NOT PARTICIPATING.**