[No. 1812-2.    Division Two.    May 20, 1975.]

ALPHA INVESTMENT COMPANY *et al, Respondents,* v. THE
CITY OF TACOMA, *Respondent,* PIERCE COUNTY, *Petitioner.*

*William R. Hickman* (of *Reed, McClure, Moceri &
Thonn*), for petitioner.

*James M. Caraher,* for respondent.

PEARSON, J.—Petitioner, Pierce County, seeks a writ of certiorari to review an order of the Superior Court denying its motion to exclude James M. Caraher as counsel for respondent, Alpha Investment Company, et al. We granted the writ as an appropriate remedy for determination of the alleged conflict of interest. *See Kurbitz v. Kurbitz*, 77 Wn.2d 943, 468 P.2d 673 (1970).

The facts pertaining to the issue of disqualification are as follows. The action by Alpha Investment Company against Pierce County is in the nature of an inverse condemnation suit in which damages are sought. Mr. George Dixon commenced the suit as attorney for Alpha on March 29, 1972, and is still attorney of record. It appears without dispute that Mr. Caraher served as a criminal deputy prosecuting attorney for Pierce County from July 3, 1972, until July 31, 1974. Some time after that, Mr. Caraher became an associate of Mr. Dixon and was given responsibility for handling the case for Alpha in February 1975.

Pierce County, through its Director of Public Works, refused to consent to having a former deputy prosecuting attorney represent its opponent in this action. Pierce County's motion to exclude Mr. Caraher was heard on affidavits and resulted in an order denying the motion.

In its oral decision the trial court advanced one principal reason for the ruling. First, none of the affidavits established that Mr. Caraher had any knowledge of or responsibility for this case during the time he worked as a deputy prosecuting attorney. In fact the affidavits showed that the office had two separate departments—one civil and one criminal. Mr. Caraher had no responsibility in the civil department.

On the other hand, however, an affidavit of the deputy prosecuting attorney charged with responsibility for the file established that the file of the case contained confidential information and was accessible to all deputy prosecuting attorneys.

In denying the motion to exclude, the trial court reasoned that because of the fact that Mr. Caraher had no

knowledge of or responsibility for this case while serving as a deputy, he was not in violation of the Code of Professional Responsibility, DR 9-101(B), which provides: "A lawyer shall not accept private employment in a matter in which he had substantial responsibility while he was a public employee."

Accordingly, the court ruled that no case for disqualification was established. We agree that the evidence in this case was insufficient to establish a violation of (CPR) DR 9-101(B) which would subject either Mr. Caraher or Mr. Dixon to disciplinary action. We do not agree, however, that it is necessary to establish such a violation in order to effect a disqualification.

In the first place the Preliminary Statement to the Code of Professional Responsibility provides: "The Disciplinary Rules state the *minimum* level of conduct below which no lawyer can fall without being subject to disciplinary action." (Italics ours.)

■ In our opinion, the argument that the *minimum level of conduct* sets the standard for disqualification of an attorney in a potential conflict of interest case overlooks the spirit of Canons 4 and 9 of the Code of Professional Responsibility. It seems to us that if the objectives of the code as a whole are to be achieved it is the *spirit* of those canons, rather than the minimum behavior proscribed by the disciplinary rules which must be observed. *See Hull v. Celanese Corp.*, 513 F.2d 568 (1975).

The objectives of the code are to improve the administration of justice so that the public will develop and maintain a respect for and confidence in our legal and judicial system.

■ (CPR) Canon 4 requires a lawyer to preserve the confidences and secrets of a client. We are of course dealing here with a former client, but it is clear that the mandates of this canon survive termination of the attorney-client relationship. *See Kurbitz v. Kurbitz, supra,* which came to that conclusion when construing the former Canons of Professional Ethics; (CPR) DR 4-101(B)(3).

The precise question then is whether a former client who seeks to exclude an attorney from representing an opponent must establish that the lawyer does in fact possess confidential information which would be detrimental to the former client's interest. We think (CPR) Canon 9 and *Kurbitz v. Kurbitz, supra,* supply the answer to this question.

(CPR) Canon 9 provides: "A Lawyer Should Avoid Even the Appearance of Professional Impropriety." Adherence to the spirit of this canon requires, we think, that the former client should not carry the burden of establishing that its former counsel in fact possessed confidential information, where the attorney had *access to the confidential information* which is material to the present suit. Such a burden of proof would be an impossible one in most instances where an associate of the attorney was responsible for handling the matter for the client.

■ In our view the rule should be that where it can reasonably be said that in the course of the former representation the attorney might have acquired information related to the subject matter of his subsequent representation, the attorney should be disqualified. The breach of confidence does not have to be proved. It should be presumed in order to preserve the spirit of (CPR) Canon 9. *Hull v. Celanese Corp., supra.* This is also the thrust of *Kurbitz v. Kurbitz, supra.* Only by application of this rule can the client, Pierce County and all its citizens, be absolutely certain that no breach of confidence was the cause of any adverse ruling which might occur in this case.

■ Respondent urges that an exception should be made for former government attorneys, who of necessity have access to numerous files. It is argued that many young lawyers seek experience in public law fields with the view of developing expertise for future private practice specialties. Wholesale disqualifications based upon the access to information rule would, it is urged, discourage attorneys from accepting government employment. 70 Harv. L. Rev. 657 (1957).

We acknowledge that some modification of the rule might be necessary in large government agencies with many lawyers, situated in multiple offices, located in various places. *United States v. Standard Oil Co.*, 136 F. Supp. 345 (S.D.N.Y. 1955).

That situation does not exist in this case. The Pierce County Prosecutor's office is a small "law" office with fewer than 20 lawyers. While the record does not indicate the size of the caseload, we see no reason for treating this case any different than a private law firm. We are not persuaded that the inconvenience to the lawyer leaving the prosecutor's office for private practice will be insurmountable to the extent that lawyers will reject employment in that office. There is a fast turnover of criminal cases under current court rules, and the unusual length of time this case has been pending should not be at all typical of civil matters handled by that office. At least we do not believe the inconvenience which might be occasioned by application of the access to information rule should override adherence to the spirit of the appearance of impropriety restriction contained in (CPR) Canon 9.

For these reasons, we hold that Mr. Caraher is excluded from further representation of Alpha Investment Company in any matter pertaining to this action. We note that the county does not seek to exclude Mr. Dixon, and we make no disposition of that matter.

ARMSTRONG, C.J., and PETRIE, J., concur.