[No. 47005-7. En Banc. December 31, 1980.]

RUDI HAHN, ET AL, *Petitioners,* v. THE BOEING COMPANY, ET AL, *Respondents.*

*Trethewey, Brink, Rossi, Todd & Clayton,* by *Daniel Brink* and *Winship A. Todd, Jr.,* and *Krutch, Lindell, Donnelly & Judkins,* by *Richard F. Krutch,* for petitioners.

*Perkins, Coie, Stone, Olson & Williams,* by *Richard C. Coyle* and *Keith Gerrard,* for respondents.

*Kurt M. Bulmer* on behalf of State Bar Association and *Daniel F. Sullivan, Jeffrey Robert White,* and *Harry M. Philo* on behalf of Association of Trial Lawyers of America, amici curiae.

ROSELLINI, J.—This is a suit brought by 56 parties against the manufacturer of a Boeing 747 airplane which crashed in Nairobi, Kenya, in November 1974. The petitioners are survivors of the crash and representatives of the estates of victims. They reside in seven countries.

From the beginning, attorneys Gerald C. Sterns and Thomas G. Smith, members of the California bar who maintain practices in that state, have been lead counsel in this lawsuit, associated with Richard F. Krutch of Seattle. They are specialists in aviation law. The suit was filed in this state, the home of the defendant corporation, in November 1977. After 2 years of pretrial preparation, the California attorneys moved the Superior Court for King County for admission pro hac vice, under APR 7.

Before the scheduled hearing on this motion, The Boeing Company filed a motion to compel discovery, requesting that the plaintiffs be required to answer questions on deposition concerning the events which led each of them to retain the California lawyers. Affidavits and exhibits were submitted which suggested a possibility, but did not establish, that the attorneys had solicited plaintiffs in this and other suits. The requested authority, as well as authority to depose the attorneys' investigators, was granted. The court also prohibited the California attorneys from participation in discovery in relation to the merits of the lawsuit until the court should rule on their motion for admission.

This order is before us for direct review. It can be sustained only if solicitation of clients is a proper basis for denial of admission to practice pro hac vice under APR 7(a). That rule provides:

## RULE 7
### PRACTICE BY MEMBERS OF BAR FROM OTHER JURISDICTIONS PROHIBITED—EXCEPTION

**(a) In General.**
(1) No person shall appear as attorney or counsel in any of the courts of this state, unless he is an active member of the state bar: Provided, that a member in good standing of the bar of any other state who is a resident of and who maintains a practice in such other state may, with permission of the court, appear as counsel in the trial of an action or proceeding in association only with an active member of the state bar, who shall be the

attorney of record therein and responsible for the conduct thereof and shall be present at all court proceedings.

(2) Application to appear as such counsel shall be made to the court before whom the action or proceeding in which it is desired to appear as counsel is pending. The application shall be heard by the court after such notice to the adverse parties as the court shall direct; and an order granting or rejecting the application made, and if rejected, the court shall state the reasons therefor.

(3) No member of the state bar shall lend his name for the purpose of, or in any way assist in, avoiding the effect of this rule.

APR 7(a) was enacted pursuant to RCW 2.48.170, and in the exercise of the court's inherent power to determine who may appear as legal counsel in its courts. *See State v. Cook,* 84 Wn.2d 342, 525 P.2d 761 (1974).

It will be seen that this rule sets forth certain specific standards for admission pro hac vice, namely: (1) good standing in the bar of another state; (2) residence in that state; (3) maintenance of a practice in that state; and (4) association with Washington counsel in the proceedings. It also requires an applicant to secure the permission of the court before which he desires to appear.

The Washington State Bar Association and the Association of Trial Lawyers of America, appearing as amici curiae, maintain that standards for admission should be uniform, ascertainable in advance, and should not be more onerous than those which are required of local counsel. They predict that the question of pro hac vice admissions will come before the courts more frequently as interstate law practices continue to grow. This growth is attributed in a widely cited law review article[1] to the increased mobility of our society; the increasing degree of uniformity in our laws, and the growth of specialization in the practice of law, attendant upon the mounting complexity of our society.

---

[1]Brakel & Loh, *Regulating the Multistate Practice of Law,* 50 Wash. L. Rev. 699 (1975).

In the view of these writers, the bar association and the trial lawyers' association, the interest of the client in choosing the attorney who will represent him makes it imperative that rules restricting interstate practice be liberalized. This need was recognized by the dissenters in *Leis v. Flynt,* 439 U.S. 438, 58 L. Ed. 2d 717, 99 S. Ct. 698 (1979), wherein the majority of the Supreme Court held that however important such representation may be to his client, a lawyer has no constitutional right to procedural due process when applying for admission pro hac vice.

In recognition of this developing phenomenon, the Code of Professional Responsibility provides at Ethical Consideration 3-9:

> **EC 3-9** Regulation of the practice of law is accomplished principally by the respective states. Authority to engage in the practice of law conferred in any jurisdiction is not per se a grant of the right to practice elsewhere, and it is improper for a lawyer to engage in practice where he is not permitted by law or by court order to do so. However, the demands of business and the mobility of our society pose distinct problems in the regulation of the practice of law by the states. In furtherance of the public interest, the legal profession should discourage regulation that unreasonably imposes territorial limitations upon the right of a lawyer to handle the legal affairs of his client or upon the opportunity of a client to obtain the services of a lawyer of his choice in all matters including the presentation of a contested matter in a tribunal before which the lawyer is not permanently admitted to practice.

The bar association and the trial lawyers' association, as well as the petitioners, urge the court to so construe APR 7(a) as to strictly limit the discretion of the superior court in passing upon applications pro hac vice. The bar association maintains that the function of the court, at that juncture, should be merely to determine whether the requirements expressed in the rule have been met. Thereafter, it suggests, the court would be free to entertain a motion for disqualification, based upon any valid ground

for such motion. The trial lawyers' association differs only in that it has no objection to the court's considering the question of disqualification at the time it considers the application for admission pro hac vice. All, save the respondents, are agreed that a visiting attorney who meets the requirements set forth in the rule should be treated the same as any local attorney.

The respondents draw the court's attention to *In re Estate of Williams,* 48 Wn.2d 313, 293 P.2d 392 (1956), and *State v. Brown,* 9 Wn. App. 937, 515 P.2d 1008 (1973). In *Williams,* it was held that a ruling upon a motion for admission pro hac vice involves an exercise of discretion so as to preclude the filing of an affidavit of prejudice. This court, in a brief statement containing no discussion of the matters to be considered by the lower court, said that, while applications are usually granted as a matter of comity and courtesy, these are considerations which bear on the question whether there has been an abuse of discretion, but do not change the fundamental character of the judicial action itself. The opinion does not purport to define the limits of the discretion reposed in the trial court. In the *Brown* case, the Court of Appeals, Division One, upheld the denial of an application for admission by an attorney who had not advised the court that he had at one time been disbarred. That case likewise contains no discussion of the scope of the trial court's discretion, nor does it cite authority to support the holding that the court's discretion was not abused. The conclusion which we reach in the instant case renders that decision questionable.

We are aware that it is the general rule that a trial judge before whom an application for admission pro hac vice is filed has discretion to deny or grant that application. There is, however, a dearth of authority defining the scope of that discretion. The question should be resolved in the light of the purpose of the rule governing such admissions and the relevant interests of the trial court, the client, and opposing counsel.

■■■ There are two legitimate judicial needs which are involved in considering a pro hac vice application: (1) reasonable assurance that the attorney is competent and will conduct himself in an ethical and respectful manner in the trial of the case, and (2) reasonable assurance that local rules of practice and procedure will be followed.

The association of local counsel is designed to secure the second of these aims.

To achieve the first, where an out–of–state attorney in good standing in the bar of his own state applies for temporary admission, chief reliance must be placed upon the competency and moral character determination made by the proper authorities in the attorney's home state. Otherwise, the superior court may be placed in the position of conducting disciplinary investigations—a function which it lacks the necessary facilities to perform, as this case demonstrates. Having no investigative personnel, the court deputized the respondent to inquire into the alleged misconduct, an inquiry which an adverse party could hardly be expected to pursue with the impartiality of a court or bar investigation.

More importantly, the superior court lacks authority to conduct disciplinary proceedings. It has, of course, the authority and duty to see to the ethical conduct of attorneys in proceedings before it. Upon proper grounds, it can disqualify an attorney. *Alpha Inv. Co. v. Tacoma,* 13 Wn. App. 532, 536 P.2d 674 (1975). *See Kurbitz v. Kurbitz,* 77 Wn.2d 943, 468 P.2d 673 (1970); 7 Am. Jur. 2d *Attorneys at Law* §§ 184–89 (1980); 7A C.J.S. *Attorney and Client* § 162 (1980); Annot., *Representation of Conflicting Interests as Disqualifying Attorney From Acting in a Civil Case,* 31 A.L.R.3d 715 (1970). It has the power to punish for contempt. RCW 7.20; 17 C.J.S. *Contempt* § 35(b) (1963). But as to matters which do not affect those proceedings, the disciplinary power rests exclusively in this court, which is assisted by its agent, the Washington State Bar Association. *State ex rel. Schwab v. State Bar Ass'n,* 80 Wn.2d 266, 493 P.2d 1237 (1972). *Cf.* RCW 2.48.060.

Another objection to the exploration of collateral disciplinary questions in the superior court is that it diverts the time and attention of the court from the matter at hand—the trial of the case. And an investigatory procedure, such as that authorized here, may work great hardship upon the visiting attorney's client, subjecting him to interrogation upon subjects unrelated to the merits of the case, perhaps undermining his confidence in his attorney, and causing further delay of his cause.

There is no reason to suppose that because an attorney has acquired his standing in a sister state, he is more apt to misbehave than one who is a member of the local bar.

The purpose of APR 7(a) can be achieved and the legitimate interests of the court and opposing counsel, as well as those of the client, can be protected if inquiries into the ethical conduct of an applicant are limited to matters which would warrant disqualification, were the attorney a member of the local bar, or which would justify discipline under the court's contempt powers.

▮ Here, it is claimed that the petitioners' attorneys violated (CPR) DR 2–103 and 104, which limit a lawyer's right to seek employment. Unauthorized solicitation is a proper subject for disciplinary action. The purpose of the prohibitions embodied in (CPR) DR 2–103(A) and 2–104(A), as expressed by the American Bar Association in its brief as amicus curiae in the case of *Ohralik v. Ohio State Bar Ass'n,* 436 U.S. 447, 56 L. Ed. 2d 444, 98 S. Ct. 1912 (1978), are: (1) to reduce the likelihood of overreaching and the exertion of undue influence on lay persons, (2) to protect the privacy of individuals, and (3) to avoid situations where the lawyer's exercise of judgment on behalf of the client will be clouded by his own pecuniary self–interest.[2]

---

[2]Not all forms of solicitation are forbidden, one pertinent consideration being the public's need to be informed of the availability and value of legal services. *See, e.g.,* (CPR) DR 2–101. The United States Supreme Court has found First Amendment protection for certain limited forms of attorney advertising. *Bates v. State Bar of Ariz.,* 433 U.S. 350, 53 L. Ed. 2d 810, 97 S. Ct. 2691 (1977). It has also found constitutional protection where solicitation by an association was

*Ohralik,* at 461. Thus, the object of the restrictions is solely to protect the client or potential client. Solicitation has no relevance per se to the conduct of the trial, nor is it prejudicial to the defendant.

Denial of permission to appear pro hac vice is in effect a disqualification of the attorney.

In *Ceramco, Inc. v. Lee Pharmaceuticals,* 510 F.2d 268 (2d Cir. 1975), the Court of Appeals observed that the typical situation in which disqualification has been found to be an appropriate remedy has involved a conflict of interest such that continued representation by chosen counsel clearly prejudiced the rights of the opposing party and, by creating the appearance of impropriety, posed a substantial threat to the integrity of the judicial process. Disqualification cases in the federal courts were extensively reviewed in *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.,* 496 F.2d 800 (2d Cir. 1974), where the court held that an order of disqualification was appealable. Every such case cited involved an alleged conflict of interest.

There have been instances in which attorneys have been denied admission or had their admission revoked upon other grounds which we consider relevant and proper. In *State v. Kavanaugh,* 52 N.J. 7, 243 A.2d 225 (1968), an attorney addressed a letter to the Governor of the state of New Jersey, claiming that the State's case was based on perjured testimony and inviting the Governor to intercede in the case. He distributed the letter to others with the intent that it reach the mass media and influence prospective jurors. For this misconduct, designed to have a direct

---

deemed necessary to secure constitutionally guaranteed civil rights. *In re Primus,* 436 U.S. 412, 56 L. Ed. 2d 417, 98 S. Ct. 1893 (1978); *NAACP v. Button,* 371 U.S. 415, 9 L. Ed. 2d 405, 83 S. Ct. 328 (1963). That court in *Ohralik v. Ohio State Bar Ass'n,* 436 U.S. 447, 56 L. Ed. 2d 444, 98 S. Ct. 1912 (1978), however, upheld disciplinary action taken against a lawyer who solicited "two young accident victims at a time when they were especially incapable of making informed judgments or of assessing and protecting their own interests", and engaged in other oppressive tactics. *Ohralik,* at 467.

impact upon the trial of the case, the attorney's permission to appear pro hac vice was revoked.

In *In re Belli,* 371 F. Supp. 111 (D.D.C. 1974), an attorney was denied admission on the basis of derogatory remarks concerning the judge who would try the case, made on television and without a factual foundation.

In *Johnson v. Trueblood,* 476 F. Supp. 90 (E.D. Pa. 1979), permission to appear pro hac vice was revoked because of the attorney's disruptive conduct during the trial.

In all of these cases the acts of the attorney were either contemptuous of the court or adversely affected the conduct of the trial. They were all flagrant and there was no need for the court to engage in investigative activities to unearth the offenses. Denial of permission to appear pro hac vice was therefore proper.

Thus, there are valid grounds upon which a trial judge, in the exercise of his discretion, may deny an application. But we are satisfied that solicitation of clients is not among them. *Accord, Fisher Studio, Inc. v. Loew's Inc.,* 232 F.2d 199 (2d Cir. 1956); *Lefrak v. Arabian Am. Oil Co.,* 527 F.2d 1136 (2d Cir. 1975).

The order is reversed, and the cause is remanded with directions to conduct a hearing pursuant to APR 7(a), in accordance with the principles expressed herein.

STAFFORD, DOLLIVER, HICKS, and WILLIAMS, JJ., and HAMILTON, J. Pro Tem., concur.

UTTER, C.J. (concurring)—The sole issue before this court is whether the trial court has discretion to deny admission to plaintiffs' out–of–state counsel because of an alleged pattern of unethical behavior in this and other cases. I believe this discretion does not exist because APR 7 does not expressly or impliedly grant discretion to the trial court to make an ethics or moral character determination when reviewing a pro hac vice motion.

The four areas of inquiry required are that the applicant be (1) in good standing of the bar of another state, (2) a resident in the other state, (3) maintaining a practice in the other state, and (4) associated with an active member of the Washington state bar. The question of whether the applicant attorney should in fact be a member in good standing of the bar of a foreign state is for that state to determine, not this state or the courts of this state. Although different jurisdictions may be inconsistent in their enforcement of ethical standards, the possibility of even greater inconsistency of treatment exists in local trial courts.

The language in APR 7 providing that an attorney may appear as trial counsel "with permission of the court" does not imply there are other standards, beyond those enumerated in the rule, that the trial court may consider. Its purpose is to ensure that the requirements of the rule have in fact been met, and to prevent self–certification by the out–of–state counsel and local associated counsel.

On the facts before us in this case I concur that the order of the trial court be reversed and a limited hearing only conducted to determine whether the requirements of APR 7(a) have been met.

HOROWITZ, J., concurs with UTTER, C.J.